SKOGLUND, J., dissenting.
 

 ¶ 20. In this matter, the trial court exercised its discretion and issued a stay of execution of its judgment of possession. Not once, not twice, but three times. However, it did so without acknowledging its authority to do so under 12 V.S.A. § 4854. Perhaps it did not consider that section. I cannot know. I do know it allowed the Mallets Bay Homeowner's Association (the Association) to remain on the land of Mongeon Bay Properties (MBP) until its prepaid rent ran out. Now, the majority elevates form over substance and remands again for the trial court to do what I believe it already did-exercise its discretion-this time under the statute, not under Vermont Rule of Civil Procedure 62. I dissent from this folly.
 

 ¶ 21. On June 23, 2015, the trial court issued a decision finding that the Association breached its lease with MBP by failing to properly maintain the property. From this decision we learn that the damage
 and injury to MBP was "more likely worse than it would have been but for the years of neglect and lack of appropriate bank stabilization and protection by lakefront camp owners and the [the Association] itself." In September 2011, MBP sent the Association a notice of default under the ground lease, outlining the claimed failure to maintain the property, "creating hazard of collapse and bodily injury" and causing a "diminution in value of the property arising from the failure of maintenance, repair and debris." The Association was put on notice to cure all the alleged defects within forty-five days, as provided by the ground lease.
 

 ¶ 22. Continuing with the trial court's findings, we learn the Association denied responsibility. At the same time, the Town of Colchester (the Town) began an action against one homeowner on MBP's property because-according to the Town's notice of violation-the structure was allegedly " 'unsafe and constitutes a potential hazard.' " No action was taken by the Association within forty-five days of the notice of default or by the homeowner within thirty days of the Town's notice of violation. MBP then commenced this action against the Association in January 2012, asking the court to declare the ground lease void and forfeited because of the alleged violations. MBP also sought a preliminary injunction to compel the Association to take immediate corrective action, and/or grant it the immediate right of reentry and possession of the entire leased premises to make necessary repairs itself. The trial court found that in February 2012 the Association finally recognized it had a duty to undertake collective action to address the bank erosion and ground stability issues.
 

 ¶ 23. In April 2012, the Town issued a second Notice of Violation directed specifically at the Association. The court found that a June 2012 attempt by the Association to fix the washout at one camp was "inadequate and failed to address or correct the issues noted by the Town in its violation notices." Again, from the trial court's decision-the Association eventually hired an engineer to develop an actual plan to stabilize the embankment. When work commenced in 2013, it was discovered that dumping of unclean fill and/or trash had occurred over the bank. By the summer of 2014, it was apparent that the attempted fix was still inadequate.
 

 ¶ 24. Finally the court found that
 

 [The Association] would probably not have taken collective action among its entire membership to address the erosion problems ... and more generally the bank stabilization and ground loss issues at the lakeshore camps where there is failing seawall protection, but for the confluence of the notices of violation from the Town, and this lawsuit brought by ... MBP. Those on-going erosion problems along the affected embankment were, and are preventable by reasonably and ordinarily required repairs and upkeep which the [Association], and not individual camp owners, was obligated to perform under the Ground Lease terms.
 

 ¶ 25. The court sardonically rejected the Association's claim that MBP failed to alert the Association that it was the latter's obligation under the lease to protect the lake embankment from unnatural and preventable soil loss so [the Association] was not responsible: "The court is ... not aware of any legal precept that requires the lessor to constantly remind the lessee of its own obligations under the lease." It further held that "MBP gave [the Association] more than sufficient time to address the deficiencies." However, the court then found that voiding the ground lease entirely would be inequitable and a sanction out
 of proportion to the lease violations involving the failures of Association.
 

 ¶ 26. We affirmed the trial court's determination that the Association breached the lease, but reversed its refusal to declare termination of the lease and to issue a writ of possession to MBP. "[W]e have never suggested that in the context of a long-term ground lease negotiated by sophisticated parties, one party may be relieved of the contracted-for consequences of its breach on equitable grounds."
 
 Mongeon Bay Props., LLC v. Mallets Bay Homeowner's Ass'n (Mongeon Bay I)
 
 ,
 
 2016 VT 64
 
 , ¶ 64,
 
 149 A.3d 940
 
 .
 

 ¶ 27. In our decision of June 10, 2016, we held that "the Association had substantially defaulted pursuant to the terms of the ground lease, and given that MBP timely and clearly asserted its election under the terms of the contract to terminate the lease, on this record MBP was entitled to terminate the ground lease as a matter of law, and is entitled to a writ of possession."
 
 Id
 
 . ¶ 69. The Association's motion for reargument was denied on July 11, 2016.
 

 ¶ 28. On September 13, 2016, the Association moved in the trial court to stay issuance of a writ of possession, arguing that the home owners needed time to relocate and that "the 10 day statutory minimum cannot possibly contemplate the tenancy here," apparently a reference to 12 V.S.A. § 4854 ("The writ shall direct the sheriff ... to serve the writ upon the defendant and, no sooner than ten days after the writ is served, to put the plaintiff into possession."). MBP opposed this motion, arguing that the problems facing the homeowners were brought about by the Association's own inaction and deliberate breach of the ground lease and noting that "[i]t has now had since June of 2016 to make plans to vacate the property but to date has done nothing except file motions." Seven days later, the Association filed another motion for a stay, this time directly referencing 12 V.S.A. § 4854 (stating that court may stay issuance of writ of possession for "good cause" shown), and asked the court to stay issuance of the writ of possession until the termination of the ground lease in 2036, "in light of the significant complexities involved." It went on to suggest "[a]t a bare minimum, [MBP] should be estopped from taking possession of the property until April 30, 2017 as [the Association] has paid (and [MBP] accepted without objection) the rent from the May 1, 2016-April 30, 2017 lease year."
 

 ¶ 29. On October 31, 2016, the court held that, because the Association had "prepaid the lot rent in full through April 30, 2017, it is only fair and equitable that the Writ be stayed through that date." It issued the writ of possession on the same day. The Association filed another motion to stay on November 9, 2016, this time relying on Vermont Rule of Civil Procedure 62(d)(3) (stating court may stay execution of writ of possession during pendency of appeal), and asking the court to stay the enforcement and execution of the writ to either the pendency of the appeal or April 30, 2017, whichever occurred later. The court denied the request to stay the execution of the writ of possession until the appeal was resolved and restated its earlier decision to stay the writ until May 1, 2017. MBP filed a request for reconsideration. The court, on November 29, 2016, concluded that there were "no issues raised which have not already/previously been considered by the court in exercising its discretion to stay enforcement of the Writ of Possession herein through the current lease term for which rent has been wholly prepaid and accepted by the [MBP]."
 

 ¶ 30. Now, on appeal, the Association claims error in the court's October 31, 2016 decision granting a stay until April 30,
 2017, interpreting the court as holding that it had no discretion to stay any writ of possession. The Association relies on the court's reference to this Court's holding that the trial court had no ability to exercise any equitable discretion to deny MBP the requested writ of possession or to determine that the lease had not been terminated pursuant to its express terms. The court then wrote, "The request that this court stay any writ of possession until the expiration of the bargained-for lease term [in 2036] would be nothing more than a back-door effort to achieve the same result rejected by the Court."
 

 ¶ 31. But in that same decision the court treated the motion for a stay as within its authority to delay or stay the effectiveness of a writ of possession commensurate with the time to take an appeal and chose to exercise its discretion to stay enforcement for a period of up to thirty days from the date of the final judgment. It again exercised its discretion when it amended its decision in November by extending the stay until May 1, 2017, because rent had been paid up to that time. Finally, upon reconsideration, it continued its decision to stay enforcement until May 1, 2017, but denied a stay for the duration of the appeal process.
 

 ¶ 32. Although the majority agrees with the trial court's conclusion that it did not have the discretion to stay the writ of possession in this case until 2036, or even for the alternative ten-year interval sought by the Association, it then goes on to adopt the Association's interpretation of the court's declination of such a stay and faults the court for failing to recognize its authority to exercise its discretion to order a stay "for good cause" to facilitate the homeowners' transition.
 
 Ante
 
 , ¶ 12. And, while it notes that "it is not at all clear at this point that the Association was prejudiced by the trial court's failure to exercise its discretion in connection with the motion for stay," it remands for the court to exercise its discretion.
 
 Id
 
 . ¶ 13.
 

 ¶ 33. I am at a loss to understand what the majority wants from the trial court. I count three times when the court exercised its discretion to grant the requested stay. To add insult to injury, the majority then directs the trial court on how to exercise its discretion. The majority suggests that it would be "difficult for this Court to imagine" a stay extending more than an additional six months and, if the stay extended beyond May 1, a bonding requirement or other sufficient advance security is necessary.
 
 Id
 
 . ¶ 18. Finally it announces this Court's probable denial of any ongoing stay of execution of the judgment should either party appeal. These disingenuous instructions setting the parameters for the court's exercise of its discretion are unsupportable.
 

 ¶ 34. I dissent.